**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **KANSAS HEART HOSPITAL, L.L.C., et al.,** ) ) ) **Plaintiffs,** ) ) v. ) **EXECUTIVE RISK INDEMNITY, INC.,** ) ) **Defendant.** ) ) | Case No. 06-1345-MLB |

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiffs' motion to compel discovery responses from defendant. (Doc. 16). For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

**Background**

This is a lawsuit to enforce the terms of an insurance policy. Highly summarized, plaintiffs allege that they are insured under a liability policy issued by Executive Risk. In February 2005, they were sued by various doctors formerly practicing with the Heart Hospital. Plaintiffs notified Executive Risk of the claims and the insurance company initially

agreed to pay for the defense of the underlying claims.[1] The insurance company subsequently withdrew its defense commitment, arguing that it had no duty to defend or indemnify under the policy.

Plaintiffs assert the following claims: (1) Executive Risk is liable for defense expenses and related costs it specifically agreed to pay before it denied coverage (Count I); (2) Executive Risk is liable for defense expenses incurred after it denied coverage (Count II); and (3) a declaratory judgment that Executive Risk has a duty to defend and indemnify with respect to the underlying claims (Count III). The claims are based on theories that Executive Risk: (1) breached the express terms of the insurance policy, (2) violated the implied covenant of good faith and fair dealing, and (3) violated the parties' "special agreement regarding the responsibility for defense." (Doc. 17, p. 2). Plaintiffs also request attorney fees pursuant to K.S.A. §§ 40-256 and 40-908.

---

[1] The underlying lawsuits are: Kansas Heart Hospital, L.L.C. and Cardiac Health of Wichita v. Badr Idbeis, M.D. et al., Sedgwick County District Court Case No. 04 CV 4230; Kansas Heart Hospital, L.L.C. and Cardiac Associates of Wichita, Inc. v. Badr Idbeis, M.D., et al., Sedgwick County District Court Case No. 05 CV 0736; and Wayel Azmeh, M.D. v. Kansas Heart Hospital, et al., Sedgwick County District Court Case No. 05 CV 1577. (Doc. 1, Attachment 1). Plaintiffs continue to defend the underlying lawsuits after Executive Risk denied coverage, "some of which have been settled, and some of which are currently pending before the Kansas Court of Appeals." (Doc. 17, p. 2).

## Motion to Compel

Plaintiffs' motion to compel reflects two major areas of dispute. First, plaintiffs argue that Executive Risk's reference to a "laundry list" of general objections and failure to provide a privilege log is improper when responding to interrogatories and production requests. Second, plaintiffs ask the court to compel complete responses to seven specific production requests. (Production Request Nos. 1, 11, 15, 16, 17, & 18). The parties' arguments and the disputed discovery responses are set forth in greater detail below.

## General Objections and Absence of a Privilege Log

Executive Risk's response to plaintiffs' first set of interrogatories contains a section entitled "GENERAL OBJECTIONS" followed by a section answering and/or objecting to each numbered interrogatory. When answering the individual interrogatories, Executive Risk spelled out some detailed objections and then qualified every answer with the following phrase: "without waiving those objections, and subject to those objections **and the General Objections**, Executive Risk responds as follows." (Emphasis added). Plaintiffs argue that defendant's blanket reference to "General Objections" is improper and makes it impossible to determine the completeness of Executive Risk's interrogatory answers.[2]

Executive Risk's attempt to qualify every interrogatory answer with a reference to

---

[2] Executive Risk also used similar language to qualify its responses to plaintiffs' First Set of Production Requests. The court's rulings concerning the interrogatory answers also apply to the production requests.

-3-

its laundry list of "General Objections" is improper. Fed. R. Civ. P. 33(b)(4) requires that "[a]ll grounds for an objection to an interrogatory **shall be stated with specificity**" and defendant's list of "General Objections" does not contain the requisite specificity. For example, general objection number 2 provides:

> 2.   Executive Risk objects to the interrogatories to the extent they seek to impose obligations different from or in addition to those imposed by the federal rules of civil procedure or other applicable law.

A generic reference to "the federal rules of civil procedure or other applicable law" is obviously not specific. Similarly, general objection number 3 provides:

> 3.   Executive Risk objects to the interrogatories to the extent they seek confidential and proprietary business information or trade secrets, or information that is subject to any applicable confidentiality orders or agreements.

It is unclear what (if any) "applicable confidentiality orders or agreements" existed when this objection was asserted. Moreover, without some clarification, neither plaintiffs nor the court are able to discern what is included in the terms "confidential and proprietary business information."[3]

In addition to the lack of specificity in the general objections, Executive Risk's attempt to qualify its answers by a reference to *all* of its "general objections" is improper because the objections do not apply to every interrogatory. For example, general objection number 4 objects to the disclosure of work product materials or attorney-client privileged

---

[3] A complete recitation of Executive Risk's "general objections" is contained in Appendix A attached hereto.

communications. However, many of the interrogatories do not even request information that falls within the parameters of the work product doctrine or attorney-client privilege.[4] Requiring plaintiffs to guess which general objection might apply to which interrogatory is inconsistent with the requirements of Rule 33(b)(4).

Because Executive Risk's interrogatory responses do not comply with the requirements of Rule 33(b)(4), plaintiff's motion to compel is granted in part.[5] Defendant shall submit a revised response to plaintiffs' interrogatories and Executive Risk's objections, if any, shall be specific and applicable to the information requested in each interrogatory.[6]

Plaintiffs also argue that Executive Risk's failure to provide a privilege log waives any claim of work product or attorney-client privilege. However, in this instance there are significant issues concerning the temporal scope of discovery and the relevant universe of documents covered by plaintiffs' discovery requests. The court agrees with defendant's

---

[4] Interrogatory No. 1 asks for the names of the persons who assisted in responding to the interrogatories. It is unclear how the requested information is protected by the work product doctrine or an attorney-client privilege.

[5] Executive Risk shall also revise its responses to plaintiffs' production requests. The generic qualification that the responses are subject to a laundry list of "General Objections" is unacceptable.

[6] This ruling should not be construed as prohibiting a party from summarizing an objection to a set of interrogatories where appropriate to avoid unnecessary repetition. The determinative issue is whether the objection, however organized, is specific enough to allow the requesting party to understand what information or documents are being withheld. For example, a blanket objection to a set of interrogatories stating that records created before 2003 are not being produced because of a lack of relevance would be acceptable because the requesting party understands what information is being withheld.

argument that the scope of discovery should be clarified before requiring Executive Risk to sort through volumes of records in order to create a privilege log. The temporal scope and relevant universe of documents are discussed in greater detail below in the analysis of the individual production requests.

## Specific Discovery Requests

### Production Request Nos. 1 & 13

Production Request No. 1 asks for:

Every operations manual, underwriting manual, procedure manual, policy manual, training manual, and every other document which:

a. Explains the intended meaning of any of the text found in the subject policy upon which you rely to support any defense or claim justifying your denial of coverage for the subject claim;

b. Explains, comments upon, or describes the coverages provided or intended by the subject policy;

c. Explains, comments upon, or describes any of the risks intended to be insured by the subject policy;

d. Explains, comments upon, or describes any of the exclusions set out in the subject policy;

e. Explains, comments upon, or describes any of the conditions set forth in the subject policy;

f. Explains, comments upon, or describes any of the policy declarations of the subject policy;

g. Explains, comments upon, or describes any of the endorsements to the subject policy;

>> h. Explains, comments upon, or describes any of the symbols, codes, or definitions of words used in the subject policy; and/or
>
>> i. Explains, comments upon, or describes any differences between the subject policy and any superseded versions of forms and endorsements comprising said subject policy.

Production Request No. 13 requests:

> Every claims handling manual, training manual, operations manual, underwriting manual, procedure manual, policy manual, and every other related document which explains, comments upon, or describes any of your rules, guidelines, or procedures relating to the investigation and/or evaluation of liability claims arising under your insurance polices.

Executive Risk argues that the two requests are overly broad and unduly burdensome on their face; therefore, plaintiffs' motion to compel should be denied.

With respect to Production Request No. 13, the court agrees that the discovery request is overly broad on its face. This lawsuit involves a directors and officers liability insurance policy, a specific type of policy. Plaintiffs offer no justification for requiring the production of documents and manuals concerning the handling of other types of insurance policies such as automobile or property insurance. Additionally, plaintiffs' definition of "you" includes all of defendant and any of the Chubb Corporation's affiliated companies. Defendant argues that the Chubb Corporation "is a holding company of more that two dozen property and casualty companies ... with 120 offices in some 29 countries worldwide." Plaintiffs have not

shown the relevance or need for conducting a worldwide search for documents.[7] Accordingly, the motion to compel Production Request No. 13 shall be DENIED.[8]

With respect to Production Request No. 1, Executive Risk argues that the request is overly broad because the request is not limited to any time period. Defendant also asserts that the nine listed categories include matters that have no relevance to this case and that a request for "all" documents is overly broad. For example, one of the categories is "endorsements" and one of the endorsements to this policy is entitled "Asbestos and Nuclear Exclusion." Plaintiffs counter that Request No. 1 is "internally limited in time and scope by being related to the text, risks, exclusion, conditions, declarations, endorsements and other elements of the 'Subject Policy.'"

The court is not persuaded that Request No. 1 is "internally limited in time and scope" as suggested by plaintiffs. The issue of an appropriate temporal scope of discovery shall be addressed at the April 18, 2007 conference after considering oral argument and suggestions by the parties.

---

[7] Plaintiffs argue that they are in a "catch-22" paradox because they have no first-hand knowledge of the internal nomenclature or operations of Executive Risk or its Chubb-affiliated companies; thus, they found it necessary to assert a broad request for manuals and documents. Plaintiffs' uncertainty is understandable; however, such uncertainty does not justify asking Executive Risk to produce volumes of manuals that have no apparent relevance. A Rule 30(b)(6) deposition may be useful in this instance to clarify Executive Risk's nomenclature and/or operations so that reasonably tailored discovery requests can be served on defendant. The scheduling of such a deposition shall be discussed at the April 18, 2007 status conference.

[8] This ruling is without prejudice to the submission of a narrowed production request.

Resolution of the parties' dispute over the nine listed areas of discovery concerning the subject policy is also problematic because neither party has provided the court with a copy of the policy. However, discovery concerning category "a" (the text of the policy upon which defendant relies to defend this lawsuit) is relevant and reasonably narrow. On the other hand, the court is unable to discern the reasons for requiring Executive Risk to produce documents concerning an "Asbestos and Nuclear Exclusion." Because the record is insufficient concerning the policy and the nature of plaintiffs' claims, the court will require oral argument at the April 18, 2007 conference concerning the scope of the materials set out in Production Request No. 1.[9]

**Production Request No. 11**

Production Request No. 11 asks for documents (1) concerning or describing incentive programs for "claim professionals/adjusters" who were/are involved in determining coverage concerning the plaintiffs' policy or (2) that reward an adjuster's ability to minimize claims under the policy in this case. Executive Risk objects to Production Request No. 11, arguing that the request is (1) overly broad on its face, (2) unlimited in time, and (3) includes other lines of insurance.

---

[9] Plaintiffs shall provide the court with a copy of the policy by noon, April 17, 2007. Plaintiffs shall also identify the provisions of the policy on which they rely to support their claim for coverage under the terms of the contract. The designation of the relevant policy terms is without prejudice to future amendments to their claims. However, the policy language will provide the court with a starting point concerning relevance.

Contrary to defendant's arguments, the request is not overly broad but is quite specific in asking for documents showing whether Executive Risk provides incentives or rewards to the claims professionals or adjusters involved in the evaluation of plaintiffs' coverage dispute. The request does not include "other" lines of insurance or temporal issues because it is limited to the plaintiffs and the underlying claims giving rise to this lawsuit. Accordingly, Executive Risk's objections are rejected and the motion to compel Production Request No. 11 shall be GRANTED.

**Production Request No. 15**

Production Request No. 15 asks Executive Risk to "produce your entire underwriting file related to Plaintiffs or any of them." In its initial response, Executive Risk objected to producing any documents concerning "any insurance policy or policies other than the policy issued by Executive Risk to KHH." After setting out this objection and also referencing its "General Objections," Executive Risk stated that it would produce, subject to its objections, a copy of the underwriting file. Plaintiffs move to compel, arguing that the reference to the general objections make it unclear whether the entire file has been produced. In response to the motion, Executive Risk clarifies that a copy of the entire underwriting file has been produced. Accordingly, the motion to compel Production Request No. 15 is MOOT and therefore DENIED.

**Production Request Nos. 16 & 17**

Production Request No. 16 asks defendant to segregate and produce the documents in Executive Risk's investigation/claims file <u>before</u> it denied coverage and Production Request No. 17 asks defendant to produce the contents of the file <u>after</u> coverage was denied. Executive Risk agreed to provide the Bates-stamp number ranges for documents responsive to these two requests and sent the information to plaintiffs in a letter dated February 6, 2007.[10] Plaintiffs also filed their motion to compel this information on February 6, 2007. Because the information has been produced, the motion to compel is MOOT and therefore DENIED.[11]

**Production Request No. 18**

Production Request No. 18 requests that Executive Risk:

> produce any documents containing statements from, or memoranda relating to, any witness, or potential witness, connected in any way with the subject claims, the subject policy, and/or the pending litigation.

Executive Risk specifically objected that (1) the term "subject claims" was ambiguous; (2) the request sought irrelevant materials, and (3) some materials were protected by work product and the attorney-client privilege. Subject to these objections, Executive Risk

---

[10] The entire contents of the investigative/claims file had been produced earlier.

[11] There is no evidence before the court that the letter containing the requested information was prepared and mailed <u>after</u> notice of the motion to compel; therefore, the court declines to award sanctions under Rule 37(a)(4).

-11-

produced responsive information in its claim and underwriting file concerning the policy at issue in the action. In moving to compel, plaintiffs argue that the production request is not overly broad and "focuses on witness statements or memoranda relating to witnesses in the possession of Executive Risk that are associated with the 'subject claim,' the 'subject policy,' and/or the 'pending litigation.'"

The problem with the production request is that it is a compound sentence, susceptible to differing interpretations. Plaintiffs argue that the request seeks statements from witnesses concerning the claims in the underlying lawsuits, the policy and/or the pending litigation. However, an equally reasonable interpretation of the request is that plaintiffs asked for any statements or memoranda related to persons who might somehow be witnesses or potential witnesses in this case. The latter request is overly broad because it would include, for example, a memoranda concerning a request for annual leave from an employee who might be a witness in this case. Although the motion to compel this production request shall be DENIED, the court will grant plaintiff leave to submit a reformulated production request to Executive Risk.[12]

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 16)** is

---

[12] Unfortunately, this is an example of a production request that became convoluted when plaintiff attempted to "cover all possible bases." If plaintiffs seek only documents concerning statements about the underlying lawsuits, the insurance policy at issue, or the pending lawsuit, the request can be significantly simplified. If a modified production request is served for such statements, Executive Risk must produce a privilege log in support of any claim of work product or attorney-client privilege.

**GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 16th day of April 2007.

S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge

APPENDIX A

**GENERAL OBJECTIONS**

1. Executive Risk objects to the Interrogatories to the extent they seek information unrelated to the issues raised in the Petition or Answer filed in this action on the grounds that such Interrogatories are overly broad and unduly burdensome and seek information that is not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

2. Executive Risk object to the Interrogatories to the extent they seek to impose obligations different from or in addition to those imposed by the Federal Rules of Civil Procedure or other applicable law.

3. Executive Risk objects to the Interrogatories to the extent they seek confidential and proprietary business information or trade secrets, or information that is subject to any applicable confidentiality orders or agreements.

4. Executive Risk objects to the Interrogatories to the extent they seek information and/or documents which were prepared, generated or received in anticipation or after commencement of this litigation, and/or to the extent they seek information subject to the attorney-client privilege, the work product doctrine, or any other applicable privilege.

5. Executive Risk objects to the Interrogatories to the extent they seek information and/or documents not in the possession, custody or control of Executive Risk.

6. Executive Risk objects the Interrogatories to the extent they seek information and/or documents from Executive Risk concerning any insurance policy or policies other than the Diversified Health Care Organization Directors and Officers Liability Insurance Policy, Policy No.

8164-4664, issued by Executive Risk to KHH that is the subject of the Petition in this action (the "Policy"), on the grounds that they are overly broad, unduly burdensome and seek information and/or

documents that are neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. In addition, Executive Risk objects to the definition "Subject Policy" set forth in the Interrogatories as vague, ambiguous and overly broad as the definition on its face refers to multiple policies without any limitation on the type of insurance policy other than the policy being issued to any of the Plaintiffs after January 1, 2004. Executive Risk also objects to the definition "Subject Claims" set forth in the Interrogatories as vague, ambiguous and overly broad as the definition simply uses the terms "claims" to define itself without identifying or defining such claims as allegations, causes of action or as having some other meaning.

7. Executive Risk objects to the Interrogatories to the extent they seek confidential business information and/or documents of a proprietary nature concerning, among other things and without limitation, internal policies and procedures, whether memorialized in writing or manuals or otherwise. Executive Risk also objects to the Interrogatories to the extent that they seek information and/or documents concerning procedures and/or guidelines of a generic nature as such information and/or documents are neither relevant to this litigation nor likely to lead to the discovery of admissible evidence.

8. Executive Risk objects to the Interrogatories as being overly broad and unduly burdensome to the extent they encompass persons or entities that are neither a party to this action nor a named insured under the alleged Policy.

9. Executive Risk objects to the Interrogatories to the extent they are unduly

burdensome and oppressive, in that the assembly and preparation of an answer to the Interrogatory would require a search for information and/or documents which are of little or no benefit with respect to the issue for which they are sought, so that the value of its production is outweighed by the burden of producing it, especially with respect to such information and/or documents which may be readily obtained by Plaintiffs from other sources.

10. Executive Risk objects to the Interrogatories to the extent they are vague in that Executive Risk is unable to determine what information and/or documents are sought, and thus are likely to lead to confusing, inaccurate, or incomplete answers.

11. Executive Risk objects to the Interrogatories to the extent they seek information and/or documents concerning claims against, coverages provided to, demands for coverage by, or litigation involving alleged insureds other than Plaintiff on the grounds that such information and/or documents are neither relevant to this litigation nor likely to lead to the discovery of admissible evidence.

Each of these General Objections applies to each individual interrogatory and is incorporated in Executive Risk's response to each Interrogatory as though fully set forth therein.