**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KANSAS HEART HOSPITAL, L.L.C., )
et al., )
　　　　　　　　　　　　　　　　　　 )
　　　　　　**Plaintiffs,** )
　　　　　　　　　　　　　　　　　　 )
v. ) Case No. 06-1345-MLB
　　　　　　　　　　　　　　　　　　 )
EXECUTIVE RISK INDEMNITY, INC., )
　　　　　　　　　　　　　　　　　　 )
　　　　　　**Defendant.** )
　　　　　　　　　　　　　　　　　　 )

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiffs' motion to compel defendant to produce documents responsive to revised Production Request No. 1.[1] (Doc. 16). For the reasons set forth below, plaintiffs' motion shall be GRANTED.

**Background**

The nature of this lawsuit is described in a prior opinion and will not be repeated except where necessary for context. See Memorandum and Order, Doc. 21. Plaintiffs assert

---

[1] Plaintiffs' motion to compel (Doc. 16) includes a number of other discovery issues which have been resolved by court order or agreement. Memorandum and Order, Doc. 21 and Order, Doc. 24. The remaining discovery issue concerns plaintiffs' Production Request No. 1 and, following the April 20, 2007 status conference, plaintiffs' modified Production Request No. 1. Both parties submitted additional arguments by letter. The letters shall be docketed and made a part of the record.

the following claims: (1) Executive Risk is liable for defense expenses and related costs it specifically agreed to pay before it denied coverage (Count I); (2) Executive Risk is liable for defense expenses incurred after it denied coverage (Count II); and (3) a declaratory judgment that Executive Risk has a duty to defend and indemnify with respect to the underlying claims (Count III). The claims are based on theories that Executive Risk: (1) breached the express terms of the insurance policy, (2) violated the implied covenant of good faith and fair dealing, and (3) violated the parties' "special agreement regarding the responsibility for defense." (Doc. 17, p. 2). Plaintiffs also request attorney fees pursuant to K.S.A. §§ 40-256 and 40-908.

## Motion to Compel

As originally drafted, Production Request No. 1 asked for:

Every operations manual, underwriting manual, procedure manual, policy manual, training manual, and every other document which:

a. Explains the intended meaning of any of the text found in the subject policy upon which you rely to support any defense or claim justifying your denial of coverage for the subject claim;

b. Explains, comments upon, or describes the coverages provided or intended by the subject policy;

c. Explains, comments upon, or describes any of the risks intended to be insured by the subject policy;

d. Explains, comments upon, or describes any of the exclusions set out in the subject policy;

e. Explains, comments upon, or describes any of the conditions set forth in

>   the subject policy;
>
>   f. Explains, comments upon, or describes any of the policy declarations of the subject policy;
>
>   g. Explains, comments upon, or describes any of the endorsements to the subject policy;
>
>   h. Explains, comments upon, or describes any of the symbols, codes, or definitions of words used in the subject policy; and/or
>
>   i. Explains, comments upon, or describes any differences between the subject policy and any superseded versions of forms and endorsements comprising said subject policy.

Defendant argued that this request was overly broad and unduly burdensome on its face because plaintiff used the phrase "every other document." Defendant also argued that the request sought irrelevant information because: (1) plaintiffs' definition of "you" was too expansive, (2) no temporal scope was provided, and (3) some provisions of the policy were irrelevant (e.g., an "Asbestos and Nuclear Exclusion").[2]

Resolution of the parties' dispute concerning Production Request No. 1 and the nine listed areas of the policy was problematic because neither party provided the court with a copy of the policy and its attachments. Plaintiffs were directed to provide the court with a copy of the policy and the matter was set for oral argument. (Doc. 21). Following oral argument, both parties exchanged modified versions of Production Request No. 1 and

---

[2] Plaintiffs' definition of "you" included defendant and any of the Chubb Corporation's affiliated companies. Defendant argued that the Chubb Corporation "is a holding company of more that two dozen property and casualty companies ... with 120 offices in some 29 countries worldwide."

submitted additional arguments. The parties' respective versions are discussed in greater detail below.

**Executive Risk's Proposal**

Defendant proposes that it produce documents pursuant to the following language:

> Any operations manual, underwriting manual, procedural manual, policy manual, training manual, or other training educational, or reference texts, ***materials***, manuals or guidelines, employed by or on behalf of Executive Risk between January 1, 2004 and the present which explains the intended meaning of the text found in the Diversified Health Care Organization Directors and Officers Liability Insurance Policy upon which Executive Risk relies to defend this lawsuit. (Emphasis added).

Defendant argues that the proposed language "seeks to describe the various types of materials listed in plaintiffs' [original] request for production without using an undefined catch-all phrase such as 'other related documents.'"

**Plaintiffs' Modified Production Request No. 1**

> Any operations manual, underwriting manual, procedure manual, policy manual, training manual, or other training, educational, or reference texts, materials, manuals, guidelines, or ***related documents***, available to

and/or employed by you[3] between January 1, 2004 and the present, to explain or interpret the intended meaning of the text found in the Diversified Health Care Organization Directors and Officers Liability Insurance Policy upon which you rely to defend this lawsuit, and specifically including any of the text found in the following forms:

> 1. Declarations, Form c23793(4/97);
>
> 2. Basic Insuring Agreements, Definitions, Exclusions, and Conditions, Form c23794 (4/97);
>
> 3. Endorsement No. 1, Form C24866 (9/97);
>
> 4. Endorsement No. 3, Form D21244A (3/2001);
>
> 5. Endorsement No. 12, Form D31485 (1/2001); and
>
> 6. Endorsement No. 13, Form 31559 (2/2001).

To clarify the term "document," plaintiffs propose the following language:

> By using the term "document," it is not plaintiffs' intent to require Executive Risk to scour its claim files in other cases to find discrete instances of an adjustor's consideration of policy text; however, it is designed to ensure that Executive Risk produces responsive documents that reflect the company's expectations, procedures, or position regarding the interpretation, meaning and/or application of the text found in any of the forms identified above. Examples of potential documents include training, educational or reference texts or materials used or relied on by Executive Risk and/or Chubb & Son (if Chubb & Son is/was responsible for managing or handling the coverage determination at issue in this

---

[3] As defined in plaintiffs' First Request for Production of Documents to Defendant:

> As used herein the words "you" and "yours" means not only Executive Risk but also its agents, attorneys, or others action on its behalf, and all entities under its control, including Chubb & Son or such other subsidiary or affiliate of Chubb Group of Insurance Companies ***involved in underwriting and/or adjusting the Subject Policy and/or Subject Claims.*** (Emphasis added).

> litigation) to train underwriting, claims or sales personnel to understand how to interpret or apply any of the text at issue and/or reference materials or resources that are utilized, or are available to be utilized, by employees or agents of Executive Risk and/or Chubb & Son who may have questions concerning the interpretation or application of any of the text at issue.

## Analysis

The difficulty with defendant's proposal is that it limits production to materials "upon which Executive Risk relies to defend this lawsuit."[4] However, plaintiffs are also entitled to discovery materials which support *plaintiffs'* theories and claims. Accordingly, defendant's proposal is too narrowly drafted.[5]

With respect to plaintiffs' modified request, defendant argues that the phrase "related document" does not define the scope of a search in any meaningful way. The court does not agree. As noted above, plaintiffs ask for "any operations manuals, underwriting manuals ... or related documents, available to and/or employed by you ... to explain or interpret the intended meaning of the text ..." When read in context, the term "related document" *is* defined in a meaningful way because defendant can readily determine whether a document

---

[4] The court previously ruled that plaintiffs' request for documents explaining "the text of the policy upon which defendant relies to defend this lawsuit" was relevant and reasonably narrow. Memorandum and Order, Doc. 21, p. 9. Defendant's proposal merely restates this holding and fails to address the broader question of production of materials which may support *plaintiffs'* claims and assertions.

[5] To be sure, plaintiffs are entitled to the materials described in defendant's proposal and those materials shall be promptly produced. However, defendant's argument that plaintiffs are only entitled to discover documents related to the defense of this case is rejected.

explains or interprets the terms of the policy which is the subject of this lawsuit.[6]

Defendant, citing Kansas law concerning *unambiguous* contracts, also argues that plaintiffs are not entitled to discover defendant's subjective intent concerning coverage issues. This argument is misguided for at least two reasons. First, this is the discovery phase of this case and there has been no showing that the contract language is unambiguous. Equally important, the allegations in this case include claims for (1) breach of an implied duty of good faith and (2) attorney fees. Evidence that defendant denied coverage contrary to internal written policies is relevant to the issues of good faith and the imposition of attorney fees.

Defendant also argues that use of the term "you" and its related definition is overly broad. The court does not agree. In the revised production request, plaintiff qualifies the term "you" (and, by definition, affiliated companies) to a very specific policy (the Diversified Health Care Organization Directors and Officers Liability Policy) for the period between January 1, 2004 to the present. The request is now narrowly tailored and reasonable.[7]

---

[6] Curiously, defendant uses the term "materials" in its proposal. "Materials" is arguably an all inclusive term. When read in context, it is difficult to see a distinction between "materials" and "related documents."

[7] In its initial response to the motion to compel, defendant argued that the Chubb Corporation had "more than two dozen property and casualty companies ... with 120 offices in some 29 countries worldwide." Because Production Request No. 1 is limited to a specific policy concerning director and officers liability, there is no need to search affiliate companies that deal with other lines of insurance such as auto or property coverage. Moreover, defendant has made no showing that *this* request requires it to conduct a worldwide search.

-7-

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel defendant to produce documents and materials responsive to plaintiffs' revised Production Request No. 1 (Doc. 16) is GRANTED. The materials shall be produced on or before **May 22, 2007.**

**IT IS FURTHER ORDERED** that defendant shall provide revised interrogatory answers and production responses, consistent with the Memorandum and Order, (Doc. 21, filed April 16, 2007), by **May 22, 2007.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 7th day of May 2007.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge